IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                                                                                                                                                1:20-cr-01441-KWR

DAMIAN ENRIQUE SANTILLANES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Indictment with Prejudice for Violations of Sixth Amendment Speedy Trial Right and the Speedy Trial Act (**Doc. 33**). Defendant seeks to dismiss his indictment on the grounds that post-indictment delays have violated his constitutional and statutory rights. Having reviewed the pleadings and the relevant law, the Court finds that Defendant's motion is not well-taken and, therefore, is **DENIED.**

## BACKGROUND

This case stems from a post-indictment delay in bringing Defendant to federal court while he was in state custody. Defendant is charged in this case with Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C), Possession of a Firearm by a Felon, in violation of 18 U.S.C. §§922(g)(1) and 924 and Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Defendant was arrested after officers found a brown tar-like substance and observed a handgun in his vehicle. On May 28, 2020, Defendant was charged in state court based on the same alleged conduct in this case. That same day, Plaintiff was booked for failure to comply with

probation in a separate state case. The state criminal case was later dismissed, and Defendant was sentenced for the probation violation in state court.

On June 4, 2020, the United States filed a criminal complaint in 20-MJ-1155 SCY, charging the defendant with a violation of 18 U.S.C. §§ 922(g)(1) and 924, that is, being a Felon in Possession of a Firearm and Ammunition.

On June 16, 2020, Defendant was scheduled for an initial appearance in federal court. However, the defendant had not yet been transferred into federal custody, and the initial appearance did not occur.  20-MJ-1155, Doc. 5.

On June 24, 2020, the district attorney entered a *nolle prosequi* in the state criminal case, stating that "[t]his matter is being referred to the United States Attorney's Office for federal prosecution."  **Doc. 34-1 at 1.**  Defendant was indicted by a federal grand jury that same day. Defendant remained in state custody while his state probation violation was being prosecuted.

On September 10, 2020, Defendant began serving a state sentence of 365 days of imprisonment for violating the terms of his state probation.  Defendant was taken into custody by the United States Marshall on September 23, 2021, after serving his state sentence.  Defendant had his initial appearance in federal court on September 24, 2021, and was arraigned on September 28, 2021.  The next day the Court set trial for November 4, 2021.

On October 28, 2021, Defendant filed his first unopposed motion to continue trial.  He filed subsequent motions to continue, until filing this motion on August 2, 2022.

A notice of supplemental authority was filed on September 9, 2022.  An objection or response was not filed within fourteen days, therefore the Court assumes this matter is now fully briefed.

**DISCUSSION**

Defendant argues that the Government violated his Sixth Amendment and statutory speedy trial rights by in part failing to give him notice of his federal indictment while he was in state custody serving a state sentence. The Court disagrees and finds that no violation of his constitutional or statutory speedy trial rights occurred.

**I.      The United States did not violate the Speedy Trial Act.**

Defendant asserts that his case should be dismissed because the Government violated the notice provisions of both the Speedy Trial Act and the Interstate Agreement on Detainers ("IAD"). The Court concludes that any violation of the notice provisions does not constitute a violation of the Speedy Trial Act warranting dismissal.

The Speedy Trial Act serves to "protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings." *See United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993). The Act provides, in part, that a defendant's trial "shall commence within seventy [70] days from the filing date of the…indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, **whichever date last occurs**." 18 U.S.C. § 3161(c)(1) (emphasis added). If the Government fails to comply with this time limit, the charges in the complaint must be dismissed, with or without prejudice. *See id.* at § 3162(a)(1). Generally, however, a state arrest does not trigger the Speedy Trial Act's clock, "even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense." *See Allen*, 986 F.2d at 1356 (quoting *United States v. Mills,* 964 F.2d 1186, 1189–90 (D.C. Cir. 1992)); *see also United States v. Asfour*, 717 F. App'x 822, 825 (10th Cir. 2017).

Here, Defendant's 70-day speedy trial period started on September 24, 2021 – the day that he made his initial appearance in federal court. 18 U.S.C.§ 3161(c)(1). At most, approximately

35 days ran until October 29, 2021, when the Court issued its first continuance order. The Court finds that Defendant's argument is not supported by the plain text of the Speedy Trial Act which provides that trial must commence within 70 days from the date of the "indictment, or from the date the defendant has appeared." *See* 18 U.S.C. § 3161(c)(1); *United States v. Kalady*, 941 F.2d 1090, 1094 (10th Cir. 1991) ("Under the plain language of the Speedy Trial Act, the seventy-day period therefore began to elapse on the 'last occur [ing]' date."). Regardless of when Defendant's federal detainer "kicked in," the appropriate measure of time is the date from the federal indictment or Defendant's first appearance, whichever occurred last. *See Kalady*, 941 F.2d at 1094; *see also United States v. Taylor*, 814 F.2d 172, 174–75 (5th Cir. 1987) ("The Speedy Trial Act does not begin to run when the defendant is arrested by state authorities on state charges, nor does it begin when a federal detainer is lodged with state authorities…Instead, only a federal arrest triggers the start of the time limits set in the Act.").

Defendant asserts that while he was in state custody, he did not receive notice of the federal detainer by Metropolitan Detention Center ("MDC") staff. Defendant argues that the Government's alleged violation of the notice provision of the Interstate Agreement on Detainers should be considered a violation of the Speedy Trial Act, warranting dismissal. The IAD "creates uniform procedures for lodging and executing a detainer by one State against a prisoner held in another." *United States v. Lualemaga*, 280 F.3d 1260, 1263 (9th Cir. 2002). The IAD requires that the entity with custody over a defendant provide notice of a detainer lodged against him. 18 U.S.C. § APP. 2 § 2(c). However, a violation of the IAD notice provisions does not create a statutory speedy trial violation. As explained above, the speedy trial clock did not begin to run until his first appearance in federal court on September 24, 2021, after he was taken out of state custody.

Alternatively, the Tenth Circuit has held that "dismissal of the indictment is not an available remedy for a violation of the notice provisions of the Interstate Agreement on Detainers." *United States v. McIntosh*, 514 F. App'x 783, 794 (10th Cir. 2013) (unpublished), *quoting United States v. Robinson,* 455 F.3d 602, 606 (6th Cir.2006).  Although *Mcintosh* is unpublished, it followed the five other circuits which had considered the issue at the time, and the Court sees no reason to deviate from *McIntosh*'s reasoning.  See *Robinson,* 455 F.3d at 606; *United States v. Lualemaga,* 280 F.3d 1260, 1265 (9th Cir.2002); *United States v. Walker,* 255 F.3d 540, 543 (8th Cir.2001); *United States v. Pena–Corea,* 165 F.3d 819, 821–22 (11th Cir.1999); *Lara v. Johnson,* 141 F.3d 239, 243 (5th Cir.1998).

There is a similar notice provision under the Speedy Trial Act, 18 U.S.C. § 3161(j)(1), and dismissal of the indictment is also not an available remedy. *United States v. Torres-Centeno*, 211 F.3d 1279, 2000 WL 377475, at *3, (10th Cir. 2000) (ruling "that even if [defendant] could establish that the government failed to act 'promptly' in obtaining his presence for trial or service the detainer, he has failed to demonstrate that dismissal of the indictment would be an appropriate remedy.").  The Tenth Circuit noted that "every circuit that has addressed this issue has held that dismissal is not an available remedy for a violation of § 3161(j)(1)." *Id.*, *cited in United States v. Chavira*, No. 16-CR-0848-WJ, 2018 WL 2744981, at *10 (D.N.M. June 7, 2018).

Therefore, there was no violation of Defendant's statutory speedy trial rights, and even if there were, dismissal is not an appropriate remedy for the violation of notice provisions.

**II.     The United States did not violate Defendant's Sixth Amendment speedy trial right.**

Defendant alternatively argues that the United States violated his Sixth Amendment speedy trial right. Among its guarantees, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend.

5

VI. "Although the right is somewhat amorphous, the remedy is severe: dismissal of the indictment." *United States v. Margheim*, 770 F.3d 1312, 1325 (10th Cir. 2014) (quoting *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010)).

A court must analyze a four-factor framework to determine whether a delay has caused a defendant to be deprived of his right to a speedy trial. *See Barker v. Wingo*, 407 U.S. 514, 530–32 (1972). The Court must weigh the following factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Margheim*, 770 F.3d at 1325–26 (quoting *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006)). The first factor "functions as a triggering mechanism, and the remaining three factors need only be assessed if the delay is long enough to be presumptively prejudicial." *Id.* at 1326 (internal citations and quotations omitted).

### A. The Length of Delay is Presumptively Prejudicial.

Under the first factor, the length of delay is presumptively prejudicial because the delay appears to be more than one year. Specifically, Defendant was federally indicted on June 24, 2020, and he filed his speedy trial motion on August 2, 2022. The Government concedes this point, and the Court agrees. Because Defendant satisfied this threshold inquiry, the Court will analyze the remaining factors.

The constitutional right to a speedy trial "attaches when the defendant is arrested or indicted, whichever comes first." *United States v. Black*, 830 F.3d 1099, 1112 (10th Cir. 2016) (citations omitted). "Arrest" means federal arrest. *See United States v. Allen*, 986 F.2d 1354, 1356 (10th Cir. 1993); *United States v. Banks*, 761 F.3d 1163, 1181 (10th Cir. 2014) ("A defendant's constitutional speedy-trial right attaches when he is arrested or indicted on federal charges, whichever come[s] first."). Thus, the Sixth Amendment right to speedy trial attaches at the point

of federal criminal charges and is "not triggered by prior state arrest or indictment." *Allen*, 986 F.2d at 1356; *see also United States v. Primm*, 1996 WL 316462, at *2 n.1 (10th Cir. 1996) (rejecting the argument that Sixth Amendment protection was triggered by defendant's initial arrest for state charges where there was a delay of more than twenty-eight months between the state arrest and subsequent federal indictment).

If Defendant makes a showing of presumptive prejudice, then the Court must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *See Doggett*, 505 U.S. at 652. "The longer the delay, the more likely it is that the first factor will weigh in the defendant's favor." *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010). In making this assessment, the Court "should take into consideration the nature of the charges." *Id.* (quoting *Barker*, 407 U.S. at 531). Here, although the delay is presumptively prejudicial, the Court finds that the delay is not lengthy given the nature of the charges, his state prosecution and custody, and the COVID-19 pandemic.

**B.   The reasons for the delay are mixed and were caused by both the Government and the Defendant, and this factor only slightly weighs against the Government.**

The second factor, the reason for delay, requires the court to "assess the reasons offered by the government for not bringing the defendant to trial in a timely fashion." *Margheim*, 770 F.3d at 1326. The Government has the burden to "present acceptable reasons for the delay." *Id.* Then, the Court must determine whether the Government's delay was willful, such as an attempt to stall the defense, or the result of a "neutral reason," such as negligence by the prosecution due to heavy caseloads. *Id.* Deliberate or willful conduct weighs heavily against the prosecution, while a "neutral reason" weighs less heavily against the government. *See Barker*, 407 U.S. at 531; *United*

7

*States v. Vaughan*, 643 F. App'x 726, 730 (10th Cir. 2016) ("[C]ourts have held that the reason-for-delay factor weighs against the government when it cannot explain its failure to arrest or notify the defendant of an indictment."). However, "[d]elays attributable to the defendant do not weigh against the government." *United States v. Hicks*, 779 F.3d 1163, 1168 (10th Cir. 2015) (finding defendant responsible for delays where he filed more than forty unique motions, including several requesting that the district court extend filing deadlines or continue hearings and changed counsel several times during the course of the proceedings). As explained below, most of the delay is not attributable to the Government. The delay that is attributable to the Government only slightly weighs against it.

The time period between May 28, 2020 through June 24, 2020, while Defendant was arrested on state charges, is not attributable to the federal government because he was first indicted on June 24, 2020. The Sixth Amendment right to speedy trial attaches when the defendant is first federally indicted, and time spent in state custody without any federal indictment or arrest does not weigh against the federal government. *See United States v. Marion*, 404 U.S. 307, 313 (1971) ("In our view, however, the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' an event that occurred in this case only when the appellees were indicted on April 21, 1970.").

The time period between June 24, 2020 through September 10, 2020, from his federal indictment through his sentencing in state court also does not weigh against the United States. During that time period, Defendant was being prosecuted in the state case and obtaining custody would interfere with state proceedings, especially in light of the COVID-19 pandemic. A delay in deferring to state prosecution to efficiently prosecute the defendant may be warranted, but delay after a state sentence is imposed may not be. *United States v. Frias*, 893 F.3d 1268, 1272 (10th

Cir. 2018); *Nixon*, 919 F.3d at 1270 ("To avoid ping-ponging Mr. Nixon between state and federal custody, federal authorities decided to wait on the state-court proceedings. This approach was permissible."). After his sentencing in state court, however, state proceedings no longer provide a justification, by itself, to delay the federal proceedings.

Next, the Court considers the delay from his sentencing in state court on September 10, 2020 through his arrest in the federal case on September 23, 2021. During this time, Defendant was serving a state sentence. The Government argues that Defendant remained in state custody due to the COVID-19 pandemic, which was an exigent circumstance and not the fault of the United States. The Government asserts that the "U.S. Marshalls Service during this span was generally unwilling to take defendants into federal custody if they had any pending state matters holding them in state custody. This was implemented to protect the health of detainees, other state inmates, Marshals' staff, court staff, and the public during the Omicron surge. It justifies the delay in this case." **Doc. 40 at 1-2.** The Court recognizes that "Marshals faced great difficulties in the pandemic in trying to balance the rights of detainees with concerns for the health and safety of detainees, other state inmates, Marshals' staff, court staff, and the public." *United States v. Gutierrez*, No. CR 20-1570 JCH, 2022 WL 3999911, at *4 (D.N.M. Sept. 1, 2022)

During part of this time, jury trials were suspended in this district, as relevant here from November 18, 2020 through February 28, 2021. The District of New Mexico entered administrative orders suspending jury trials beginning March 16, 2020 through July 30, 2020, and November 18, 2020 through February 28, 2021. *See, e.g.*, 20-MC-00004, Doc. 19 (suspending jury trials from May 19, 2020 through July 6, 2020); 20-mc-4, Doc. 27 (suspending jury trials from July 2, 2020 through July 30, 2020); 20-mc-4, Doc. 39 (suspending jury trials from November 18, 2020 through January 4, 2021); 20-mc-4, Doc. 49 (suspending jury trials from December 21, 2020

through January 31, 2021); 21-mc-4, Doc. 4 (suspending jury trials from January 15, 2021 through February 28, 2021). Courts nationwide have also acknowledged the necessity to continue jury trials in light of the unprecedented COVID-19 pandemic. *See, e.g.*, *United States v. Woolard*, No. CR18-217RSM, 2020 WL 6528865, at *2 (W.D. Wash. Nov. 5, 2020) ("In any event, the arrival of the COVID-19 pandemic would have made any jury trial impossible from March to the present day, for the reasons stated above and in the Court's General Orders on the subject"); *United States v. Tapp*, No. CR 19-35, 2020 WL 6483141, at *2 (E.D. La. Nov. 4, 2020) ("[T]he safety of witnesses, court personnel, jurors and the parties in the midst of a global pandemic justified the continuance of jury trials."). As relevant here, the Court finds that delay was justified from November 18, 2020 through February 28, 2021, due to exigent circumstances caused by the COVID-19 pandemic. Notably, the District of New Mexico did not suspend jury trials throughout the pandemic, but only when case numbers warranted it. The Government was justified in not transporting Defendant to federal court during the periods in which he could not have a federal trial because of the district's COVID-19 safety protocols.

However, there were still approximately 10 months, including September 10, 2020 through November 18, 2020, and March 1, 2021 through September 23, 2021, during which jury trials were not suspended, and Defendant had not yet been brought to federal custody. As explained below, although the Court finds that the Government has not shown a justification for the delay, the Court finds that the Government did not have an improper motive, and any delay only slightly weighs against the Government.

Here, it appears that Defendant's state court proceedings were over by September 10, 2020, when he was sentenced. The Government has not shown that the Defendant could not have been taken in to federal custody to allow his federal proceedings to begin. The Court notes that the

Government has not presented evidence on the logistical difficulties in transporting the Defendant from state to federal custody. For example, the Government has not shown there would have been dual proceedings, requiring Defendant to transfer back and forth between state and federal custody, or that his federal prosecution would have interfered with the serving of his state sentence. Therefore, the Government was responsible for approximately ten months of delay, from September 10, 2020 through November 18, 2020, and March 1, 2021 through September 23, 2021.

However, the Court must then assess the "degree to which the government caused the delay." *Batie*, 433 F.3d at 1291. The government's motive in causing the delay is particularly relevant to this factor. *See id.* A delay that was deliberately caused to gain a strategic advantage will weigh heavily against the government, while delays due to negligence or crowded court dockets weigh less heavily against the government. *Seltzer*, 595 F.3d at 1177.

Here, the Court finds that the Government's motive was to navigate exigent circumstances, including stemming the spread of COVID-19 among detainee populations and others, and therefore, the delay weighs less heavily against the Government. "Stemming the spread of COVID-19 is unquestionably a compelling interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020). For public health reasons, the District of New Mexico entered Administrative Orders suspending jury trials for certain periods of time between March 16, 2020 and February 28, 2021. Courts nationwide acknowledged the need to continue jury trials in light of the unprecedented COVID-19 pandemic and to safeguard public health. Although the Court finds that the Government has not shown there was an acceptable reason for the delay, the Court does not find that the Government acted willfully or deliberately. Rather, it appears the Government was acting for a proper purpose, i.e., public health. Therefore, this delay only slightly weighs against the Government.

Next, the Court finds that the period between September 24, 2021 through October 28, 2021 does not weigh against the Government. On September 24, 2021, Defendant first appeared before a federal judge. Defendant was arraigned on September 28, 2021, and trial was set the next day for November 8, 2021. Defendant filed a motion to continue on October 28, 2021. During this time period, Defendant was arraigned and he received his first trial setting. Therefore, any delay during this time period was not the fault of the United States.

Moreover, the Court finds that Defendant is responsible for any delay beginning October 28, 2021 through the pendency of this motion to dismiss. Defendant filed multiple motions to continue trial, and then on August 2, 2022 filed this motion to dismiss. In the motions to continue, Defendant requested additional time to prepare his defense, obtain new counsel, and negotiate a plea deal. The Government did not cause any delay during this time period, and therefore the delay beginning October 28, 2021 does not fall on the Government.

Therefore, at most the Government was responsible for 10 months of delay. However, as explained above, the Government did not have an improper motive, and the delay was in part caused by exigent circumstances. Therefore, this factor only slightly weighs against the Government.

C. **Defendant nominally asserts his Speedy Trial right, but his conduct indicates otherwise.**

The third factor assesses whether a defendant asserted his right to speedy trial without unreasonable delay. The Court may "assign strong weight to the defendant's assertion of his constitutional speedy-trial right" and may "weigh the frequency and force of [a defendant's] objections' to the delay." *Margheim*, 770 F.3d at 1328. "A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due

process." *See Barker*, 407 U.S. at 527. Thus, a defendant does not bear the burden of protecting this right, particularly if he is uninformed that formal proceedings triggering that right have commenced against him. *See Doggett*, 505 U.S. at 653–54 (1992); *see also Vaughan*, 643 Fed. Appx. at 731. However, the Court may consider "whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Batie*, 433 F.3d at 1291.

Here, Defendant was not aware that there was a federal indictment pending against him until he was arrested on September 23, 2021. He could not assert his speedy trial rights until his first appearance, the next day. However, since then his conduct as reflected on the court docket has not indicated a desire to speedily go to trial. Upon his arraignment, this case was set for trial on November 4, 2021. However, Defendant has filed multiple motions to continues his trial. He has not asserted his speedy trial right on the docket or on the record until this motion.

Therefore, Defendant's actual conduct and tactical litigation decisions contradict his assertion of his desire to have a speedy trial. *See United States v. Tranakos*, 911 F.2d 1422, 1429 (10th Cir. 1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire."). The Court concludes that this factor weighs against Defendant.

### D. Defendant Has Not Shown Definite Prejudice.

Under the final *Barker* factor, Defendant bears the burden to demonstrate that his Sixth Amendment right to a speedy trial was prejudiced by the delay. *See Seltzer*, 595 F.3d at 1179. Although a delay may be presumptively prejudicial under the first *Barker* factor, the Court "will relieve a defendant of his separate burden to present specific evidence of prejudice…only if there is evidence of an extreme delay." *Black*, 830 F.3d at 1121–22 (internal quotations and citations

omitted); *see Seltzer*, 595 F.3d at 1180 n.3 (requiring a delay of six years to constitute extreme delay). If a defendant cannot show "extreme delay," the defendant must

> make a particularized showing of prejudice which addresses the interests the speedy trial right was designed to protect. These interests include (i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) [the] minimization of the possibility that the defense will be impaired.

*Black*, 830 F.3d at 1122 (internal citations and quotations omitted). Here, the Court finds there was no extreme delay relieving Defendant of his burden to show prejudice. Rather, Defendant asserts that he was prejudiced in the following three ways.

First, Defendant generally asserts that the delay deprived him of the chance to request a concurrent sentence. This asserted prejudice is merely speculative, as Defendant has not shown that he would be entitled to a concurrent sentence. Defendant did not serve a state sentence based on the same underlying conduct in this case, but rather served a sentence for violation of his probation. "The Court agrees that the focus on the sentence Defendant may receive is too speculative to show prejudice, given the Court's discretion to factor into a reduced sentence the arguments Defendant makes concerning application of the guideline." *United States v. Gutierrez*, No. CR 20-1570 JCH, 2022 WL 3999911, at *6 (D.N.M. Sept. 1, 2022) (rejecting concurrent sentence argument); *Nixon*, 919 F.3d at 1273 (the defendant's burden in showing prejudice requires more than showing a mere possibility of prejudice); *see also United States v. Jumaev*, 20 F.4th 518, 543 (10th Cir. 2021) (explaining that, even if a defendant's sentence can be valid component of speedy trial analysis, defendant failed to show why sentence imposed rendered pretrial incarceration oppressive where his period of pretrial detention fell within applicable sentencing guidelines range); *Frias*, 893 F.3d at 1274 (finding little to no prejudice from defendant missing her window to ask state court to modify or reduce her state sentence so as to mitigate effect of a

consecutive federal sentence and effectuate state court's intent of concurrent sentence or from her losing a chance for parole in state case because she was in federal custody).

Second, he asserts he was deprived of the opportunity to assert his rights under the Speedy Trial Act. The record does not suggest that he would have asserted his speedy trial rights earlier. Rather, this case proceeded from September 23, 2021 through August 1, 2022 without an assertion of his speedy trial rights, and instead, Defendant filed four motions to continue. Moreover, the loss of the right to assert speedy trial is implicit, and Defendant must show that such a loss caused him lost opportunities for his defense during the delay. *United States v. Frias*, 893 F.3d 1268, 1274 (10th Cir. 2018) (a wait to assert a statutory speedy trial clock right "is implicit in any delay and therefore fails to establish the requisite prejudice necessary to trigger a constitutional delay," especially when the defendant cannot show any lost opportunities from the delay (unlike the defendant in *Seltzer*)); *Nixon*, 919 F.3d at 1277 ("the lost opportunity to invoke the Speedy Trial Act constituted prejudice in *Seltzer* only because the defendant had shown other lost opportunities for his defense during the delay period."). Here, the record does not reflect that the delay caused him any specific lost opportunities for his defense.

Finally, Defendant asserts he was deprived of assistance of counsel in his federal case for one year. However, Defendant has not argued or shown how his trial defense would be impaired from the delay in receiving counsel. For example, Defendant has not shown the delay resulted in loss of specific evidence or the unavailability of witnesses. *Frias*, 893 F.3d at 1273.

Considering the factors above, the Court finds they do not weigh in Defendant's favor. As to the first factor, Defendant has not specifically articulated how the delay increased his period of pretrial incarceration. Although he suggests he could have received a concurrent sentence, as explained above, that is merely speculative.

15

As to the second factor, the Court recognizes that most defendants experience anxiety and concern because of a delay in their trial date. However, Defendant must "show some special harm suffered which distinguishes his case." *See Hicks*, 779 F.3d at 1169 (quoting *United States v. Gould*, 672 F.3d 930, 939 (10th Cir. 2012)). This harm must be different than "any other arrestee awaiting trial." *See United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994). Here, Defendant fails to identify such harm, and therefore, this factor weighs in favor of the Government.

Finally, under the third and most important interest, Defendant has failed to show that the delay has impaired his defense. "A defense is hindered in the sense that the defendant was not able to defend the charges against him to the extent he desired if, for example, as a result of the delay, the defense no longer had access to certain evidence or could no longer use a witness because that witness died before trial." *Larson*, 627 F.3d at 1209 (internal quotations and alterations omitted) (quoting *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir.2009)). Defendant has not demonstrated any cognizable hindrance to his defense. The loss of access to counsel, without any showing of how a trial defense was impaired, is not sufficient to prove impairment of a defense. *Frias*, 893 F.3d at 1273; *United States v. Nixon*, 919 F.3d 1265, 1276–77 (10th Cir. 2019). Moreover, the hindrance of his ability to invoke his speedy trial rights, without showing how it caused lost opportunities to his defense, is also insufficient prejudice under this factor. *Nixon*, 919 F.3d at 1277 ("the lost opportunity to invoke the Speedy Trial Act constituted prejudice in *Seltzer* only because the defendant had shown other lost opportunities for his defense during the delay period."); *United States v. Frias*, 893 F.3d 1268, 1274 (10th Cir. 2018).

Therefore, the Court concludes that Defendant has not shown that he was prejudiced by the delay, and this factor weighs in favor of the United States.

E.  **A Balancing of the Factors Leads to the Conclusion that Defendant's Sixth Amendment Right to Speedy Trial Has Not Been Violated.**

The Court's analysis is a balancing test in which none of the factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Seltzer*, 595 F.3d at 1181 (citation omitted). However, "[f]ailure to show prejudice caused by the delay is nearly fatal to a speedy trial claim." *Hicks*, 779 F.3d at 1168 (10th Cir. 2015) (internal citations and quotations omitted).

In the balancing of these factors, the Court finds that the lack of prejudice, while not dispositive by itself, is fatal to Defendant's motion. Here, the first factor, length of delay, was presumptively prejudicial because the delay was over one year, which weighs in Defendant's favor. The second factor, reason for delay, was the result of the nationwide coronavirus pandemic, time spent in resolution of state criminal proceedings, or the result of Defendant's own motions to continue. As explained above, however, this factor weighs slightly against the United States. The third factor, assertion of speedy trial right, weighs against the Defendant because although Defendant asserted his speedy trial rights in the present motion, his actions did not indicate a desire to proceed expeditiously to trial. Finally, the prejudice factor weighs against Defendant because he did not carry the burden to demonstrate that the delay prejudiced his case. Notwithstanding the fact that he has been detained during the COVID-19 pandemic and faced anxiety and frustration, the Court is unable to find that Defendant has suffered any specific prejudice in terms of impairment of his defense. In sum, no violation of Defendant's Sixth Amendment speedy trial guarantee occurred.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss **(Doc. 33)** is hereby **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE